IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02766-PAB

ANDREW M. MORGAN,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

This matter is before the Court on plaintiff Andrew M. Morgan's complaint [Docket No. 1], filed on October 10, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On January 26-27, 2011, plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. at 12. Plaintiff alleged that he had been disabled since November 17, 2004. *Id.* After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on August 9, 2012. *Id.* On August 30, 2012, the ALJ denied plaintiff's claim. *Id.* at 22.

The ALJ found that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, panic disorder, and posttraumatic stress disorder.  R. at 15.  The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.*, and found that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday.  [Plaintiff] can never climb ladders/ropes/scaffolds, but can otherwise occasionally climb, balance, stoop, kneel, crouch and crawl.  [Plaintiff] should avoid hazards such as unprotected heights, moving mechanical parts, and operation of a motor vehicle.  Mentally, [plaintiff] can understand, remember, and carry out simple instructions.

R. at 16.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that plaintiff can perform.  *Id.* at 21.

The Appeals Council denied plaintiff's request for review of the ALJ's partial denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result

based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point

in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden

of establishing a prima facie case of disability under steps one, two, and four, the

burden shifts to the Commissioner to show the claimant has the residual functional

capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731

(10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the

claimant has the initial burden of proving a disability, "the ALJ has a basic duty of

inquiry, to inform himself about facts relevant to his decision and to learn the claimant's

own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

4

## C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) rejecting plaintiff's subjective complaints due to plaintiff's failure to undergo a recommended surgery and (2) failing to consider and/or mischaracterizing medical evidence in the record.  *See generally* Docket No. 13.  Plaintiff also argues, in the alternative, that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) because plaintiff obtained new and material evidence of his disability shortly after the hearing.  *Id.* at 21-23.

The relevant evidence of record is as follows.[1]  Plaintiff alleges he became disabled on November 17, 2004, R. at 172, but alleges he stopped working because of his condition on April 1, 2010.  *Id.* at 222.  In his disability report, plaintiff claimed that he suffered from a broken spine, anxiety disorder, and PTSD.  *Id.*  In October 2010, plaintiff reported to Dr. Jennifer Blair that he was experiencing neck pain after falling down a flight of stairs.  *Id.* at 364.  A December 14, 2010 MRI revealed "grade 1-2 anterior spondylolisthesis"[2] at the L5-S1 vertebrae and "severe narrowing of the bilateral foramina, left greater than right."  *Id.* at 342-43.  In January 2011, Dr. Mark Robinson recommended a transforaminal lumbar interbody fusion surgery.  R. at 379.  Plaintiff was initially scheduled for the surgery in February 2011, but he canceled the surgery.  *Id.* at 424.  A subsequent MRI in August 2011 showed "stable severe bilateral

---

[1]Plaintiff does not challenge the ALJ's findings concerning plaintiff's mental RFC. *See generally* Docket No. 13.  As such, the Court only recites facts that are relevant to the ALJ's physical RFC determination.

[2]Spondylolisthesis is "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum."  Stedman's Medical Dictionary spondylolisthesis (27th ed. 2000).

neural foraminal narrowing including significant compression of the bilateral exiting L5 nerve roots." *Id.* at 421.  In January 2012, Dr. Robinson observed that plaintiff has "severe narrowing of his exiting nerve roots" and "would benefit significantly from the surgery." *Id.* at 424-25.

Sometime before March 14, 2012, plaintiff was scheduled for surgery, but the surgery was postponed due to weather.  *Id.* at 433.  Plaintiff testified at the hearing that he never underwent the surgery. *Id.* at 40.

On April 19, 2011, Kirk Lima, a "single decision maker" ("SDM"), completed a physical residual functional capacity assessment of plaintiff.  R. at 54-56.  The SDM opined that plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds, can stand and/or walk for four hours and sit for about six hours in an eight-hour workday, should climb ramps, stairs, ladders, ropes, or scaffolds only occasionally, and should balance, stoop, kneel, and crouch only occasionally.  *Id.* at 55.  The SDM opined that plaintiff has no manipulative, visual, communicative, or environmental limitations.  *Id.* at 56.  In July 2012, orthopedic surgeon Dr. Morris Susman reviewed the record to evaluate plaintiff's claimed limitations.  R. at 419.  Dr. Susman adopted the findings of the SDM, but added the limitations that plaintiff should never climb ladders, ropes and scaffolds, and should avoid concentrated exposure to hazards which could require sudden body movement.  *Id.*

In October 2012, following the ALJ's adverse decision, plaintiff submitted additional documents to the Appeals Council.  *See* R. at 437-94.  These records showed that, on October 1, 2012, plaintiff complained to Dr. Blair that he had recently

6

started a job as a diesel mechanic and started having "bad back pain." *Id.* at 466.  An MRI performed in October 2012 found that plaintiff had "grade II spondylolisthesis" with "moderate to marked bilateral facet joint hypertrophy with ligamentum flavum thickening" and "severe bilateral foraminal stenosis and compression of bilateral L5 roots." *Id.* at 439.  Following the October 2012 MRI, plaintiff met with neurosurgeon Joseph Morreale, who observed that plaintiff had a limited range of motion in the lumbar spine due to pain, had "no gait disturbance," and had "grade 2 isthmic spondylolisthesis at L5-S1" with "significant compression of the L5 nerve roots bilaterally." *Id.* at 444-45.  Dr. Morreale observed that he did "not see any way [plaintiff] can continue to work with this." *Id.* at 445.  The Appeals Council found that the documents submitted after the hearing concerned a time period after the ALJ's decision and thus did not affect it.  *Id.* at 1-2.

### 1. The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred in finding that plaintiff's subjective complaints about the severity of his impairments were not credible.  Docket No. 13 at 12.  Specifically, plaintiff argues that the ALJ discounted his subjective complaints because plaintiff declined to undergo a recommended surgery, but did not conduct the inquiry necessary to deny plaintiff benefits for failure to follow prescribed treatment.  *Id.* at 13 (citing *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985)).[3]  Plaintiff claims that he

---

[3]In *Teter*, the Tenth Circuit held that a court reviewing whether a claimant's noncompliance with prescribed treatment precludes recovery of disability benefits must consider whether there is substantial evidence that (1) the treatment at issue is expected to restore the claimant's ability to work, (2) the treatment was prescribed, (3) the treatment was refused, and (4) the refusal was without a justifiable excuse. *Teter*, 775 F.2d at 1107; *see also Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) (same).

had a justifiable excuse for noncompliance, namely, the substantial risks associated with the surgical procedures his treaters recommended.  *See* Docket No. 13 at 16-17.

"Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Credibility determinations may not be conclusory, but must be "closely and affirmatively linked" to evidence in the record.  *Id.*  However, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] agency's findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations omitted).  The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.*

The Commissioner argues that the four-factor inquiry that plaintiff refers to only applies when an ALJ denies benefits on the basis of noncompliance and does not apply here, where the ALJ used noncompliance with recommended treatment as a basis for his credibility finding.  Docket No. 14 at 11.  The Court agrees with the Commissioner.  The Tenth Circuit has clarified that the factors outlined in *Teter* and *Frey* do not apply where an ALJ considers evidence that a claimant did not follow prescribed treatment in assessing the claimant's credibility.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (distinguishing *Frey* where "[t]he ALJ . . . did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain –

including whether he took pain medication – in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling") (citations omitted); *see also Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (upholding credibility finding because "[t]he failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment").

Plaintiff argues that the ALJ's failure to consider his plausible justification for noncompliance is relevant to credibility determinations as well.  Docket No. 17 at 5 (citing *Holbrook v. Colvin*, 521 F. App'x 658, 662 n.5 (10th Cir. 2013)).  The *Holbrook* court noted that "noncompliance could lose its force" in determining credibility "if the claimant asserted a plausible justification." *Holbrook*, 521 F. App'x at 663 n.5.  The Court need not decide, however, whether the ALJ committed error in not specifically discussing plaintiff's alleged fear of the risks of surgery.  As the Commissioner points out, plaintiff's decision to decline recommended surgery was only one of several grounds that the ALJ cited in finding that plaintiff's subjective complaints were not fully credible.  The ALJ also considered plaintiff's "poor work record," R. at 19, objective findings that plaintiff's pain was well managed with medication and that he had an "intact balance/gait," *id.*, global assessment of functioning scores that indicated only mild to moderate symptoms, *id.*, and plaintiff's reports to treaters that his anxiety was only intermittent. *Id.*  The Court finds that the ALJ's credibility finding is "closely and affirmatively linked" to evidence in the record, *Kepler*, 68 F.3d at 391, and is therefore supported by substantial evidence.

### 2. *Consideration of Medical Evidence*

Plaintiff argues that the ALJ erred in failing to discuss significant medical

evidence and in mischaracterizing the evidence of record as showing "rather

unremarkable objective exam findings."  Docket No. 13 at 19.

Plaintiff argues that the ALJ did not discuss plaintiff's August 2011 MRI, which

showed "stable significant compression of the bilateral exiting L5 nerve roots," *id.*

(citing R. at 420-21) (plaintiff's emphasis removed), and Dr. Robinson's January 2012

opinion that plaintiff had "severe narrowing of the exiting nerve roots" and would

benefit significantly from the surgery.  *Id.* (citing R. at 424).  The Court disagrees.  The

ALJ's RFC determination was based on Dr. Susman's review of plaintiff's record.  R. at

20; *see also id.* at 419.  Dr. Susman's July 2012 review post-dates the August 2011

MRI and Dr. Robinson's treating notes.  *Id.* at 419.  Based on his review of plaintiff's

record, Dr. Susman adopted, with modifications, the SDM's assessment of plaintiff's

RFC.  *See id.* at 419.  Plaintiff does not point to anything in the report of the August

2011 MRI result or Dr. Robinson's treatment record that contradicts Dr. Susman's

findings as to plaintiff's residual functional capacity.  Moreover, Dr. Susman's physical

RFC finding was the only such opinion on record from a medical source, and the ALJ

found that it was entitled to substantial weight because it was "consistent with and

supported by the objective findings of record."  *Id.* at 20.  An ALJ is entitled to rely on a

State agency physician's opinion so long as he explains the weight he is giving to it.

*See Hamlin v. Barnhart*, 365 F.3d 1208, 1216 (10th Cir. 2004).  The Court finds that

the ALJ did not err in his treatment of plaintiff's medical records.

Plaintiff also argues that the ALJ mischaracterized medical evidence as

reflecting "rather unremarkable objective exam findings."  Docket No. 13 at 19.  Plaintiff

does not point to any specific record that the ALJ mischaracterizes, but instead notes

that plaintiff's primary care provider is "a clinic for the uninsured or underinsured, which potentially affected the qualify of care he received," and points to the absence of notes of testing as evidence of a "dearth of physical examinations of Plaintiff's musculoskeletal region." *Id.* at 19-20.  The legal effect of plaintiff's argument is unclear.  Plaintiff appears to take issue with the ALJ's conclusion that the objective exam findings were "unremarkable" by pointing to a relative scarcity of such findings, but plaintiff does not argue that the ALJ failed to develop a sufficient record.  The Court finds that the ALJ did not mischaracterize any medical evidence in a manner that was prejudicial to plaintiff's claim for benefits.

### 3. *Sentence Six Remand*

Plaintiff argues that, if the Court finds that the ALJ's decision is supported by substantial evidence, the Court should remand the case pursuant to sentence six of 42 U.S.C. § 405(g) ("sentence six").

Sentence six provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  A sentence six remand is not a ruling on the merits of the ALJ's decision.  *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

The Commissioner argues that a sentence six remand is not appropriate because plaintiff submitted Dr. Morreale's notes and the October 2012 MRI to the Appeals Council.  Docket No. 14 at 18-19.  The Court agrees.  Sentence six applies only to evidence that a party "fail[ed] to incorporate . . . into the record in a prior

proceeding." 42 U.S.C. § 405(g).  Evidence presented to, and rejected by, the Appeals

Council is not new for sentence six purposes.  *DeGrazio v. Colvin*, 558 F. App'x 649,

652 (7th Cir. 2014) ("The evidence that the Commissioner characterized as 'new' in

her motion . . . was not new for purposes of sentence six because it already had been

presented to the Appeals Council"); *see also Ingram v. Comm'r of Soc. Sec. Admin.*,

496 F.3d 1253, 1269 (11th Cir. 2007) ("Sentence six allows the district court to remand

to the Commissioner to consider previously unavailable evidence; it does not grant a

district court the power to remand for reconsideration of evidence previously

considered by the Appeals Council").  A sentence six remand is therefore inappropriate

in this case.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Andrew M.

Morgan was not disabled is **AFFIRMED.**

DATED March 30, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge